ARCHER & GREINER, P.C.
Allen G. Kadish
Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036
212-682-4940
akadish@archerlaw.com
hbreakstone@archerlaw.com

*Attorneys for Sherwood Partners, Inc.*

**Hearing Date: February 26, 2025 at 9:30 a.m. (ET)**
**Objection Deadline: February 19, 2025 (ET)**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

In re:                                             Chapter 11

MAGNACOUSTICS, INC.,                               Case No. 21-70670-reg

        Debtor.

----------------------------------------------------X

## NOTICE OF FINAL FEE APPLICATION OF
## SHERWOOD PARTNERS, INC.
## FOR ALLOWANCE AND TO COMPEL
## PAYMENT OF AMOUNTS DUE FOR SERVICES
## RENDERED IN ACCORDANCE WITH 11 U.S.C. § 328

**PLEASE TAKE NOTICE** that a hearing on the Final Fee Application of Sherwood Partners, Inc. for Allowance and to Compel Payment of Amounts Due for Services Rendered in Accordance with 11 U.S.C. § 328 (the "**Application**") will be held on February 26, 2025 at 9:30 a.m., telephonically, or as soon thereafter as counsel may be heard (the "**Hearing**") before the Honorable Robert E. Grossman, United States Bankruptcy Court Eastern District of New York.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Application shall: (i) be in writing, (ii) state with particularity the basis of the objection, and (iii) be filed with the Clerk of the United States Bankruptcy Court, and served upon the undersigned and relevant parties so as to be filed and actually received and no later than seven (7) days before the Hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that if no opposition is filed, the Court may enter an order granting the relief requested in the Application.

Dated: New York, New York
       January 24, 2025

ARCHER & GREINER, P.C.

By: _/s/ Allen G. Kadish_
    Allen G. Kadish
    Harrison Breakstone
    1211 Avenue of the Americas
    New York, New York 10036-8701
    212-682-4940
    akadish@archerlaw.com
    hbreakstone@archerlaw.com

*Attorneys for Sherwood Partners, Inc.*

ARCHER & GREINER, P.C.
Allen G. Kadish
Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036
212-682-4940
akadish@archerlaw.com
hbreakstone@archerlaw.com

*Attorneys for Sherwood Partners, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

In re:                                              Chapter 11

MAGNACOUSTICS, INC.,                                Case No. 21-70670-reg

                    Debtor.

----------------------------------------------------X

**FINAL FEE APPLICATION OF
SHERWOOD PARTNERS, INC.
FOR ALLOWANCE AND TO COMPEL
PAYMENT OF AMOUNTS DUE FOR SERVICES
RENDERED IN ACCORDANCE WITH 11 U.S.C. § 328**

TO THE HONORABLE ROBERT E. GROSSMAN,
UNITED STATES BANKRUPTCY JUDGE:

       Sherwood Partners, Inc. ("**Sherwood**"), by and through its counsel, Archer & Greiner, P.C., respectfully submits this final fee application for allowance and to compel payment of amounts due under that certain Engagement Letter Agreement, dated November 11, 2021 (the "**Engagement Letter**") and the July 15, 2022 Court order (the "**Retention Order**"), for the provision of certain services by Sherwood to Magnacoustics, Inc., debtor herein (the "**Debtor**") in accordance with 11 U.S.C. § 328 or otherwise as set forth below.[1]  In support of this Motion, Sherwood respectfully represents:

---

[1] A certification in support hereof is attached as Exhibit A.

**I.**

1.      This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue of this case and this motion in this district is proper under 28 U.S.C. § 1408.

2.      The statutory predicates for the relief requested herein are sections 328, 330 and/or 503 of the United States Bankruptcy Code (the "**Code**").

**II.**

**BACKGROUND AND FACTS**

3.      On April 9, 2021, the Debtor commenced a voluntary case under chapter 11, subchapter V, of the Code in this Court.  The Debtor continued to operate its business and manage its properties as debtor-in-possession.  A subchapter V trustee was appointed; his appointment has been discharged.  No other trustee, examiner, or statutory committee of creditors was appointed.

4.      Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this subchapter V case was set forth in the *Declaration of Lisa Lederer pursuant to Local Bankruptcy Rule 1007-4 and in Support of Chapter 11 Petition and First Day Motions* filed on the Petition Date (the "**Lederer Declaration**") [ECF No. 2].

5.      By Engagement Letter dated November 11, 2021, the Debtor retained Sherwood in a consulting and advisory capacity and as sale agent for the sale of the assets of the Debtor; a copy of the Engagement Letter is attached as Exhibit B.

6.      By application (the "**Application**") (two months later) filed on January 20, 2022 [ECF No. 85] the Debtor sought to retain Sherwood.  As part of the Application, the Debtor recited that the Debtor had attempted to engage the services of a sales agent and interviewed many parties.

Unfortunately, the Debtor found that qualified sales agents like Sherwood were not interested in taking on such a small engagement. One after another qualified sales agent turned down the engagement. The Debtor reported it felt fortunate to have attracted a sales agent with the qualifications of Sherwood and believed that if the Application would be denied for any reason, it would not be able to come up with as qualified an alternative sales agent. (*See* Application at paragraph 6.) Thus, the Debtor established its need to retain Sherwood as a sales agent.

7.     By Order (six months later) dated July 15, 2022 [ECF No. 110] (the "**Retention Order**"), Sherwood's engagement was approved "effective as of the Confirmation Date." A copy of the Retention Order is attached as <u>Exhibit C</u>. The Retention Order was entered on July 15, 2022, the same day as the order confirming the Debtor's plan [ECF No. 109]. The effective date of the plan was declared on August 9, 2022 [ECF No. 115].

8.     Sherwood rendered services to the post-confirmation Debtor and was paid for certain periods through December 2023. Despite Sherwood's efforts, acknowledged by the Debtor, no sale could be achieved.

9.     By letter dated December 13, 2023, the Debtor terminated Sherwood's engagement. A copy of such letter is attached as <u>Exhibit D</u>.

10.     Sherwood is still owed $33,750.00 for periods pre-termination. A final invoice, dated January 30, 2024, for services through December 2023, is attached as <u>Exhibit E</u>.[2]

11.     The Debtor acknowledged an amount due to Sherwood in the Debtor's termination letter but paid neither the amount owed nor even the (lesser, incorrect) amount acknowledged in the termination letter.

---

[2] Sherwood is not seeking a "success fee," just its unpaid monthly fees through termination.

12.     Efforts have been made over an extremely lengthy period of time to procure payment.  Sherwood is informed that the Debtor continued to operate and has paid other on-par obligations (including as set forth on post-confirmation reports).

13.     Sherwood's services were deemed essential to the estate at the time of its retention. *See* the Affidavit filed in support of confirmation (copy attached as Exhibit F) at paragraph 11. Just having Sherwood engaged – regardless of future services -- provided the Debtor a program, and grounds, in part, to emerge from its subchapter V case.  Sherwood did indeed provide services aimed at a sale or investment, but no transaction emerged.  Sherwood provided its services under a § 328 protocol – monthly fee plus success fee (if any).  Sherwood should not be left to have provided due value, actual services and subsidized the Debtor, post-confirmation, by providing services pursuant to Court order without compensation.

## III.

## RELIEF REQUESTED

14.     Sherwood respectfully requests entry of an order, substantially in the form of the proposed order annexed as Exhibit G hereto, allowing and compelling payment of its outstanding invoice for amounts still owed under the Court-approved Engagement Letter.

## IV.

### BASIS FOR RELIEF

A.      The Bankruptcy Court
          May Enforce its Own Orders

15.      Where the Court is asked to enforce its own order, no other process is needed. A bankruptcy court has the discretion and authority to enforce its own orders. *See*, *e.g.*, *Travelers Indemnity Co. v Bailey*, 557 U.S. 137, 129 S. Ct. 2195, 2197 (2009); *In re Congoleum Corp.*, 636 B.R. 362, 372 n.3 (Bankr. D. N.J. 2022). The Retention Order itself reserves this Court's jurisdiction to "hear and determine all matters arising from or related to [its] implementation or interpretation …." Sherwood performed *post-confirmation*. No authority other than the Retention Order need be considered.

B.      Section 328

16.      Although the Retention Order cites section 328 and provides for a fee application, the fee application requirement should be moot given that the Retention Order was entered along with the confirmation order. The fixed amount involved and the efforts to impress upon the Debtor its obligation to make payment – as it did with respect to certain prior payments to Sherwood – dictate that this should be paid on a post-confirmation basis without the requirement of a fee application.

17.      Nevertheless, given that the Debtor has declined to make payment, Sherwood presents this final fee application under § 328.

18.      Section 328(a) arrangements are viewed prospectively, not retrospectively, except if deemed improvident in light of unforeseeable circumstances. *See*, *e.g.*, *In re Energy Partners Ltd.*, 409 B.R. 211 (Bankr. S.D. Tex. 2009); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000). Once pre-approved, the reasonableness of the fees already was decided.

*See*, *e.g.*, *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997). The Debtor acknowledged the rendering of services. Sherwood acted in accordance with its Engagement Letter. The value of having Sherwood as a sale agent – alone – allowed a "dual track" approach as was certified in the confirmation affidavit, a copy of which is attached hereto as <u>Exhibit F</u>. There is no dispute that Sherwood acted in accordance with the Engagement Letter on a monthly basis to attempt a post-confirmation sale.

C.      <u>Administrative Expense Claim</u>

19.      In the alternative and to the extent applicable, Sherwood requests that this Court grant its request as an allowed administrative expense in the amount of $33,750.00 and order the Debtor to pay such administrative expense pursuant to section 503(b)(1)(A) of the Code.

20.      Section 503(b) of the Code provides for the priority payment of nine categories of allowable administrative expenses. 11 U.S.C. § 503(b). The underlying purpose of section 503 is to incentivize third parties to provide necessary goods and services to a debtor in exchange for administrative expense priority. *See In re Adelphia Bus. Sols., Inc.*, 296 B.R. 656, 663 (Bankr. S.D.N.Y. 2003).

21.      One of the categories of administrative expenses permitted under the Bankruptcy Code are the "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Courts award administrative expense status to transactions where the estate received a post-petition benefit. *See e.g., Food Emp'rs Labor Rels. Ass'n v. A&P*, 620 F. App'x 31, 33 (2d Cir. 2015) (courts recognize administrative expenses that arise from a transaction between a creditor and debtor to the extent the benefit was "both supplied to and beneficial to" the debtor); *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998) (transactions in the ordinary course of a debtor's business are expenses of administration).

22.     To show that a claimant is entitled to an administrative expense, "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." *In re Waste Systems Intern., Inc*., 280 B.R. 824, 826 (Bankr. D. Del. 2002).  The Supreme Court provided an expansive interpretation of what is an 'actual, necessary cost' entitled to priority, and stated that "'actual and necessary' costs should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Reading Co. v. Brown*, 391 U.S. 471, 484 (1968).  Sherwood certainly rendered necessary services, as agreed.

23.     With respect to timing of payment of Sherwood's administrative claim, the Code provides that an allowed administrative expense must be paid by the effective date of a confirmed plan. 11 U.S.C. §1129(a)(9).  However, bankruptcy courts have the discretion as to whether to provide for immediate payment of an allowed administrative claim.  *In re HQ Global Holdings, Inc*., 282 B.R. 169, 173 (Bankr. D. Del. 2002).  In doing so, bankruptcy courts consider various factors, including prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors in undertaking this analysis. *In re Garden Ridge Corp*., 323 B.R. 136, 143 (Bankr. D. Del. 2005).  Additionally, one of the primary factors that bankruptcy courts consider is the potential impact on an orderly and equal distribution among creditors and "the need to prevent a race to the debtor's assets" which is typically a concern if the estate if not able to pay all administrative claims in full.  *In re HQ Global Holdings Inc*., 282 B.R. 169, 173 (Bankr. D. Del. 2002).

24.     Here the Debtor itself attested to the need for the retention in its Application. Sherwood should be entitled to an allowed administrative expense for the actual cost and value of the post-confirmation services that have been provided to the Debtor.  The services under the Agreement were undoubtedly needed to continue, maintain and preserve the Debtor's businesses,

and attempt a sale which, at the time, was necessary to confirm and proceed on a post-confirmation basis. The necessity of such services was described in the Debtor's Application and supporting papers. Other on-par administrative professionals have, upon information and belief, been paid.

25. Meanwhile, upon information and belief, the Debtor, in the time since confirmation, has never been able to sell itself whether with or without Sherwood's help. Sherwood's fee is long-earned and payment is overdue. The time for payment is now. Given that the retention order was entered at the time of confirmation, Sherwood could not have been paid as a matter of confirmation of the Debtor's plan. As evidenced by the invoice, $33,750.00 is the post-confirmation amount still owed by the Debtor under the Agreement, which should be allowed and paid now.

D.    Section 330

26. Finally, if the Court would apply a fee application standard using section 330 of the Code to compel payment, a theory Sherwood does not support, Sherwood was duly retained by Court order; the retention was effective <u>after</u> the fee application deadline in the Court so it should be moot; there was no requirement to keep hourly time; nevertheless, the outstanding fee should meet the section 330 standard.

27. There are numerous factors to be considered by the Court in determining allowances for compensation. *See, e.g., In re Haimil Realty Corp.*, 579 B.R. 19 (Bankr. S.D.N.Y. 2018); *In re GSC Group, Inc.*, 502 B.R. 673 (Bankr. S.D.N.Y. 2013); *In re West End Fin. Advisors, LLC*, 2012 Bankr. LEXIS 3045 at *6 – 12, 2012 WL 2590613 (Bankr. S.D.N.Y. July 2, 2012, Bernstein, J.); *In re Parkview Care & Rehab. Ctr., Inc.*, 2010 WL 3517069 (Bankr. E.D.N.Y. Sept. 7, 2010). *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 185 (2d Cir. 2008); *In re Drexel Burnham Lambert Group*

*Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991); *In re Nine Associates, Inc.*, 76 B.R. 943 (S.D.N.Y. 1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr. S.D.N.Y. 1986). The perspective from which an application for an allowance of compensation pursuant to section 330 of the Code should be viewed is as follows:

> [B]ankruptcy legal services are entitled to command the same competence of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11. Contrary language in the Senate report accompanying S.2266 is rejected, and *Massachusetts Mutual Life Insurance Company v. Brock*, 405 F.2d 429, 432 (5th Cir. 1968) is overruled. Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code.

124 Cong. Rec. H11,092 (daily ed. Sept. 28, 1978) (emphasis added). *See also In re McCombs*, 751 F.2d 286 (8th Cir. 1984); *Drexel*, 133 B.R. 13.

28. In accordance with the factors enumerated in section 330 of the Code, here the fees incurred in the course of rendering professional services were actual, necessary and reasonable, based upon the nature, extent and value of such services, the time spent thereon, the rates charged, and the costs of comparable services in non-bankruptcy cases, as evidenced by the agreement itself so as to best serve the needs of the Debtor. There was no hourly, or lodestar, arrangement. The fees were fixed by month and pre-approved. As set forth in the Debtor's Application, the work Sherwood did on behalf of the Debtor was necessary and reasonable and benefitted the Debtor and its estate; the Debtor acknowledged as much in its Termination Letter.

**V.**

**WAIVER OF MEMORANDUM OF LAW**

29.     No brief is filed in support of this Motion because the legal principles and authorities involved are set forth above and waiver of the filing of a separate document is respectfully requested.

**VI.**

**NO PRIOR REQUEST**

30.     No prior request for the relief sought herein has been made to this or to any other court.

**VII.**

**RESERVATION OF RIGHTS**

31.     Sherwood expressly reserves all of its rights, claims, counterclaims, defenses, interests, actions and remedies, including the right to supplement this motion or seek alternate relief, and further reserves any other rights that it may have under applicable law.

**VIII.**

**CONCLUSION**

32.     Sherwood engaged amicably with the Debtor and its counsel for an extended period with respect to its on-par fee, which should be exempt from Court review, as above.  To the extent a section 328 or other application is required for the amount due, Sherwood hereby requests such an award.

WHEREFORE, Sherwood respectfully requests entry of the proposed order attached hereto as <u>Exhibit G</u> granting the relief requested herein, and such other and further relief as is just and proper.

Dated: New York, New York            ARCHER & GREINER, P.C.
       January 24, 2025

                                    By: *_/s/ Allen G. Kadish_*
                                       Allen G. Kadish
                                       Harrison Breakstone
                                       1211 Avenue of the Americas
                                       New York, New York 10036-8701
                                       212-682-4940
                                       akadish@archerlaw.com
                                       hbreakstone@archerlaw.com

                                       *Attorneys for Sherwood Partners, Inc.*

**EXHIBITS**

A       Certification

B       Sherwood Engagement Agreement

C       Sherwood Retention Order

D       Magnacoustics to Sherwood Termination Letter

E       Sherwood Invoice and Account Record

F       Confirmation Affidavit

G       Proposed Order

**A**     **Certification**

ARCHER & GREINER, P.C.
Allen G. Kadish
Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036-8701
212-682-4940
akadish@archerlaw.com
hbreakstone@archerlaw.com

*Attorneys for Sherwood Partners, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                              Chapter 11

MAGNACOUSTICS, INC.,                                Case No. 21-70670-reg

                      Debtor.

-------------------------------------------------------X

## <u>CERTIFICATION</u>

PETER HARTHEIMER, an authorized representative of Sherwood Partners, Inc.

("**<u>Sherwood</u>**"), hereby certifies, under penalty of perjury, with respect to the prefixed Application,

as follows:

1.      I read the Application, support the statements made therein, and certify that to the

best of my knowledge, information and belief, formed after reasonable inquiry, except as may

specifically be indicated to the contrary, (a) the Application complies with the Engagement Letter

and Retention Order and to that extent with local rules and the United States Trustee guidelines as

they may apply, (b) the fees sought by Sherwood comply with local rules and guidelines, and (c)

the fees sought by Sherwood were billed consistent with the Court-approved engagement letter.

2.	In such respects, Sherwood respectfully suggests that the Court simply may enforce the Retention Order without a further section 328, 330 or 503 analysis.  Nevertheless, Sherwood respectfully presents this request in accordance with section 328, and otherwise, as requested.

3.	Sherwood has communicated about this matter with the Debtor and its representatives.  Early on, the response was to wait along with other on-par professionals as the business would be able to yield the fee payments.  Further, that there was no need for a fee application as the engagement (regardless of the Retention Order) commenced upon confirmation and the plan required fee applications by confirmation, so the fee application requirement was moot.  Of late, the response was to file a fee request with the Court.  The Debtor's and its representatives' positions shifted, but Sherwood needs clarity and seeks satisfaction of its outstanding invoice.

4.	As is well documented to the Debtor and its representation, Sherwood performed services as requested and the Debtor has not contested that.

5.	In order to further inform the Court, Sherwood, following retention as sales agent worked diligently with the Magnacoustics leadership team to prepare for the transaction process.  Sherwood worked collaboratively to develop an offering memorandum, populate an online data room, and set a calendar for the transaction process over an approximate ten-week period.  A target list of interested parties was prepared.

6.	On November 1, 2022, Sherwood made its first outreach to the market and followed with a second outreach November 8, 2022 and phone calls to parties who had not responded to the outreach.  The results of the outreach are shown below.

| 93 | Total Targets |
|----|---------------|
| **50** | **No Response** |
| 43 | Total Responded |
| 3 | Review pre-NDA |

| 0 | Total NDAs With Continued Interest |

7.    Target list development was based on Sherwood's database, industry research of likely strategic and financial buyers and supplemented by Magnacoustics with their industry contacts.  As a courtesy to the customer and counsel, the target list was shared for approval with the customer before engaging in the market.  Thereafter, the offering memorandum was circulated with an NDA to prospects for consideration.

8.    Magnacoustics edited the target list, removed certain names and added few of its own.  Within two weeks of poor results, Sherwood proposed an additional twenty targets that were industry participants in the MRI audio space and/or original equipment manufacturers, some of which were customers of Magnacoustics.  Two of these parties were approved by Magnacoustics to contact.

9.    Magnacoustics negotiated for a delay in efforts given a certain trade show, notwithstanding Sherwood's inclination to proceed.  Ultimately, working together and in good contact with Magnacoustics, no transaction was achieved.

10.    Sherwood's monthly fee was modest compared to a potential success fee.  Sherwood worked toward a transaction until its efforts were stopped upon termination by Magnacoustics.  Sherwood's monthly fees were not dependent upon result.  Sherwood's monthly fee was set by the Retention Order in advance.

11.    Sherwood provided its final invoice to the Debtor requesting payment, with no resolution.  Sherwood respectfully requests an order allowing and directing payment of its final invoice for services through December 2023, in the amount of $33,750.00.

Dated: New York, New York
          January  25 2025

_Peter S. Hartheimer_
_____
Peter Hartheimer

**B      Sherwood Engagement Agreement**



November 11, 2021

Mrs. Lisa Lederer
Chief Executive Officer
Magnacoustics, Inc.
1995 Park Street
Atlantic Beach, New York 11509

Re:    Engagement Letter Agreement

Dear Lisa:

This letter agreement (the "Agreement") is entered into on October____, 2021, by and between Sherwood Partners, Inc. ("Sherwood") and Magnacoustics, Inc., debtor and debtor-in-possession in case number 21-70670 pending in the United States Bankruptcy Court for the Eastern District of New York ("Client" or "Company"). This letter sets forth the consulting and advisory services to be rendered by Sherwood to the Client hereunder. This Agreement shall not be binding on any party unless and until it is approved by the bankruptcy court having jurisdiction over the Magnacoustics bankruptcy case (the "Bankruptcy Court"). This Agreement is made on the following terms and conditions for valuable consideration, the receipt and adequacy of which is hereby acknowledged:

1.    **ENGAGEMENT**.  Sherwood's authority and duties shall include the following:

**Advisory Services**: Sherwood shall make itself available to consult with and advise Client on certain matters of importance concerning the business affairs of Company (the "Engagement"), as requested by Client and accepted by Sherwood, in accordance with this Agreement. Specifically, Sherwood will provide advisory services as the Sales Agent detailed below:

- **Assets Sales**: The process to be undertaken by Sherwood under this Engagement is to market and assist client to sell substantially all the Company's assets. Sherwood's efforts shall include (i) advising on the structure of a sale process, (ii) working with Client to develop a target list of potential acquirers, (iii) working with Client to prepare an offering memorandum, non-disclosure agreement and data room; (iv) assisting potential buyers with due diligence and formulation of offers, and (v) working with Client and the Client's attorneys to assist with the closing of a sale transaction.

Sherwood will rely on Client to provide key data and information; therefore, Sherwood's ability to serve asthe client's sales agent will depend on the Client's timely responsiveness.

Sherwood will be the exclusive Sales Agent to the Client.

Client and Sherwood anticipate that Client shall file a motion to retain Sherwood as its sales agent, in accordance with the terms of this agreement.

2.    **NO RESULT GUARANTEED**. While the goal of the Engagement is to provide useful advice that may facilitate solutions to certain of Client's perceived problems, there can be no assurance of the success of such solutions or any solutions to such perceived or other problems of Client, and Sherwood does not guarantee any particular result from its services.

Client acknowledges and agrees that Sherwood is not directly or indirectly responsible or liable for or on account of any decision, act or omission of any creditor, including any creditor who may support or encourage the Engagement.

3. **OTHER SERVICES**. Unless otherwise hereafter agreed in writing by Sherwood, no other services or advice is required.

4. **LIMITATIONS**. Nothing herein requires or contemplates Sherwood providing any legal advice (since it does not practice law), any accounting or auditing services, any real estate brokerage services, or any other services requiring a license. Nothing herein requires Sherwood to perform at a level of expertise with reference to any industry standard, since Sherwood's obligation is to perform services solely as an independent contractor only (and not as a fiduciary, partner, agent, or other relationship, each of which is disclaimed and excluded from this Agreement) using commercially reasonable efforts of diligence and care under the circumstances by reference to the practical capabilities of Sherwood as they exist, without requiring additional staff or other changes in Sherwood or its business practices or capabilities. To the extent that Sherwood provides any advice or opinions, Sherwood does so based upon the understanding that Client will consider the same as general business suggestions that are subject to Client checking with Client's counsel for any legal problems or concerns, with Client's accountant or auditor as to such accounting or audit concerns, and with other experts as appropriate. Notwithstanding any other provision of this Agreement to the contrary, Client, on behalf of itself and its affiliates, represents, warrants and agrees that, if Client or any of its affiliates advises Sherwood of any fact or situation, whether directly or through any of its employees, officers, directors, members, partners, managers, attorneys, accountants or other agents, Sherwood may conclusively rely on such communication, as well as the Client's documents, books and records, unless the Client specifically warnsSherwood that particular documents or information is inaccurate, incomplete or unreliable in some specified respect. While Sherwood might be able in time to discover errors on its own, Client directs Sherwood not to be so distracted but to prioritize its Engagement services. In addition, Client further represents, warrants and agrees that Sherwood need not concern itself with Client's affiliates, except when and to the extent Client and Sherwood include that in the Engagement, since Client separately from Sherwood shall make such adjustments and supplements to its dealings with its affiliates as Client and its counsel warrant will comply with all legal duties to such affiliates. Sherwood may then advise what Client may do in the Engagement, assuming that Client so complies with any obligations to its affiliates and their respective equity holders and creditors.

5. **GROSS VALUE OF SALE OF ASSETS.** In the event of any sale, the term "Sales Gross Value" as used in this Agreement shall be the sum of all cash and non-cash consideration that includes the aggregate consideration (1) received by Client, and holders of any secured, priority and/or general unsecured claims against Client (to the extent such payment to creditors reduces the amount of claims), and/or (2) otherwise paid or received from or to be paid or received under any Transaction. The Gross Value includes but is not limited to:

a) Cash;

b) Stock, equity interests, membership interests, and or partnership interests used as consideration by the financing source, joint venture partner or buyer and received as consideration;

c) Payments made in installments;

d) Notes, securities and other property;

e) Assumed secured debt;

f) Contingent payments (whether or not related to future performance, earnings or operations) when earned and paid;

g) Any interest or other payments actually received on or in respect of debt from buyer;

h) Any other payment actually received on or in respect to the equity interests (including, without limitation to the following, shareholder or membership interests) in Client; and

i) Any release or assumption of bonds.

Valuation. For purposes of calculating the Sales Gross Value received, any non-cash distributions shall be valued as follows and consistent with:

- Publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the contemplated Transaction whereby such securities are exchanged as consideration, unless the value of such securities is disclosed in a court approved disclosure statement in support of a confirmed Chapter 11 plan, the securities will then be valued based on such disclosure statement;

- Any other non-cash distributions shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by Client and Sherwood; and

- if the parties are unable to agree upon the value of any other property, its value will be determined by the Bankruptcy Court. A.

Transaction. As used herein, the term 'Transaction" shall include any transaction or series of transactions, which in each case may include:

- Any transaction pursuant to which the Client or the Assets are acquired by any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (collectively, a "Purchaser").

- The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) in a single transaction or series of transactions, of all or a portion of the Assets; or

- The closing of any sale, transfer or assumption of all or a portion of the Assets including without limitation any note evidencing a security interest in the Assets, stock or other interest of the Client; provided, however, that such sale, transfer or assumption shall not be deemed a Transaction unless and only to the extent that such Transaction results in consideration paid to the Client.

6. **TERM**. Sherwood's retention by Client is effective upon approval of this Agreement by the Bankruptcy Court and shall continue until the Engagement is concluded or terminated in accordance with Paragraph 13.

7.   **FEES**. As consideration for the services to be provided by Sherwood, Client shall pay the following fees:

    A.    Upon entry of the order retaining Sherwood as financial advisor, Client shall pay $7,500 to Sherwood.

    B.    Upon acceptance of an offer the client shall pay an additional $2,500[1] .

    C.    Additionally, the Client shall pay to Sherwood a consulting fee of $7,500 per month for the first three (3) months and $3,750 permonth thereafter ("Consulting Fee'). If Client has insufficient cash to pay this on a monthly basis, it may accrue be paid out of the sale proceeds, but in any case, such fees have administrative priority status.

In addition to the Consulting Fees above, Sherwood will be entitled to a success fee ("Success Fee") equal to 10% of the Gross Value of a Transaction. The Success Fee shall be paid directly to Sherwood upon the closing of any Transaction as a cost of sale as approved by the Bankruptcy Court. Sherwood shall credit  $10,000 against the success fee. [2]

8.   **NON-SOLICITATION**. Sherwood incurs considerable effort and expense in recruiting and training its professional staff (the "Sherwood Staff").  Therefore, the Client agrees that neither it, nor any of its affiliates, nor any of their respective officers, directors, employees, members, partners, managers or agents shall, directly or indirectly, extend an offer of employment or solicit any of the Sherwood Staff during the Term and for a 24-month period after the Term. For such purposes such terms "offer" or "solicit" are used in their broadest and most comprehensive sense and include any form of encouragement. If the Client, any of its affiliates or any of their respective officers, directors, employees, members, partners, managers or agents hire any of Sherwood's Staff under any circumstances whatsoever and regardless of who first approaches whom or how that is arranged, Client agrees to compensate Sherwood the sum of $50,000 for each member hired from the Sherwood Staff. This payment to Sherwood is not a penalty, but rather is an amount of liquidated damages which Client acknowledges to be reasonably equivalent to both the cost to Sherwood of replacing each of such persons and the cost saved by the Client (or such other hirer) in recruiting and training a comparable person.

9.   **EXPENSES**. Sherwood shall also be reimbursed for all reasonable out-of-pocketexpenses, including but not limited to, travel, copying costs, and any other costs incurred by Sherwood in the course of activities or actions required or permitted by this Agreement. The intent of the Agreement isthat the compensation payable to Sherwood under Section 7 is in addition to Client paying Sherwood to acquire whatever Sherwood reasonably requires to perform the Engagement that is not provided timely by the Client. Client acknowledges that Sherwood will need to arrange at Client's expense to cover all travel, meals and lodging for the Sherwood team required to perform the contemplated services. Sherwood shall be reimbursed by Client promptly upon approval by the Bankruptcy Court.

---

[1] Sherwood will present all offers to the client, and the client as Debtor in Possession, has full discretion to accept or reject any offer.

[2] If the winning bid includes an earn-out provision, Sherwood will receive its success fee relating to the earn-out portion at the same time as liquidity is received by the Client's estate or any successor thereto.

10. **INFORMATION**. Client agrees to instruct Company to supply, in a timely manner, Sherwood with such information, including documents, books and records in written and/or electronic format, as Sherwood reasonably requests in order for Sherwood to perform its responsibilities with respect to this Agreement (the "Materials"), as well as access to all relevant computer records and Company email systems and to knowledgeable officers, employees, managers, directors, members, partners, affiliates, agents, and otherrelevant parties in interest and professionals as Sherwood may find useful to understand or evaluate the Materials and otherwise perform the contemplated or permitted activities or services in the Engagement. Client grants Sherwood discretionary authority to disclose such information about Client or Materials as Sherwood deems appropriate in order to perform its duties and responsibilities or to exercise its rights, subject to appropriate confidentiality. Confidentiality agreements may be required by Sherwood to be executed, where appropriate by such third parties with respect to such disclosures. Client agrees that it shall at all times provide Sherwood, and any third party to whom Client has asked Sherwood to provide comments, with all material information required, to the best of its knowledge, for the Client's position to be true, complete, not misleading and fairly presented. Client agrees that, if it makes a communication to a third party in Sherwood's presence (or in a communication on which Sherwood is copied) which is incorrect, incomplete or misleading, Sherwood may disclaim any implied agreement by Sherwood with such communication. At the same time, Client acknowledges that Sherwood is not engaged (i) to perform any audits of Company or (ii) to develop opinions at a level which would enable Sherwood to make any representations or warranties about Company to any third party or (iii) otherwise to incur any risk of liability to any third party in the performance of Sherwood's Engagement.

**11. GOVERNING LAW; FORUM; ARBITRATION; .** This Agreement and and all matters related hereto shall be interpreted, governed by, and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely in such State without reference to conflicts of law, principles or principles of comity. Any controversies, claims or disputes relating to this Agreement or arising in connection with or under this Agreement or any acts, omissions or relationships contemplated or taken, occurring, or arising pursuant to or as provided in this Agreement or otherwise from or in connection with the Engagement or any acts or omissions if any party or person in the cause thereof, whether relating to or arising in breach of contract, tort, equity or other claim or dispute of any kind under any theory, shall be heard and resolved solely by the Bankruptcy Courtpresiding over Client's chapter 11 Case.

**12. TERMINATION**. Upon five (5) days written notice either party may terminate this Agreement,except as to provisions expressly stated herein to survive termination and without prejudice to rights that have accrued as of such termination, including any rights to payment that have accrued at that time, whether absolute, contingent or inchoate, liquidated or unliquidated and however and whenever arising orasserted. Upon any termination or expiration of this Agreement, Sherwood shall be entitled to payment of all fees and other amounts accrued as a result of this Engagement upon approval by the Bankruptcy Court, including those asserted after termination on account of events or matters occurring before termination, and all out-of-pocket expenses described in Paragraph 9. Paragraphs 4, 5, 7, 8, 9, -18 and 19 ofthis Agreement and the indemnity and the obligation to pay any fees and other amounts earned but unpaid described in Paragraph 7 or other provisions of this Agreement shall remain operative and in full force and effect regardless of any termination or expiration of this Agreement. Upon termination, Sherwood will supply Client with a list of all parties to whom it introduced client's sale opportunity during the pendency of this agreement. Should Client close on a Transaction with any such party within six (6) months of termination of this Agreement, then Client will pay the success fee to Sherwood set forth in ¶ 7. Otherwise, Sherwood will not be entitled to any compensation for a Transaction which closes after Termination.

**13. CONFLICTS; NO REFERRAL EXPOSURE**. Client acknowledges that Sherwood and its affiliates may have and may continue to have consulting and/or other relationships with parties other than Client, including creditors or equity holders of Client, pursuant to which Sherwood may have or acquire information of interest to Client. Sherwood shall disclose relationships with creditors or investors to the extent known to Sherwood. Client recognizes that Sherwood is being engaged hereunder to provide the services described above only to Client, and Sherwood is not directly or indirectly acting as an agent or fiduciary of, and shall have no duties or liability, whether express or implied, to the current investors or creditors of Cf lent or any third party in connection with this Engagement, all of which are hereby expressly waived and disclaimed. No one other than Client Is authorized to rely upon the Engagement of Sherwood hereunder or any communications, statements, advice, opinions or conduct of Sherwood, and Client is product of Sherwood without its prior written consent and under circumstances where Sherwood incurs
no risk of liability to such third party' or others on account thereof.

**14. MUTUAL REPRESENTATIONS AND WARRANTIES**. Both Client and Sherwood hereby each represent and warrant for itself that, subject to Bankruptcy Court approval of this Agreement (a) such party to this Agreement has full and unrestricted authority and right to make and perform this Agreement in accordance with its terms; (b) the making or performance of this Agreement by Client or Sherwood, as the case may be, shall not violate any rights of,agreements with or obligations to any third parties; (c) this Agreement shall be and is a valid and binding obligation of such party which is legally enforceable in accordance with its express terms; and (d) Client or Sherwood, as the case may be, shall not circumvent or otherwise frustrate the expressed intent or expressed provisions of this Agreement. APART FROM THE FOREGOING, SHERWOOD MAKES NO REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, AND SHERWOOD DISCLAIMS (AND CLIENT WAIVES) ANY IMPLIED WARRANTIES OF ANY KIND, INCLUDING ANY WARRANTIES OF FITNESS OR MERCHANTABILITY OF ANY SERVICES OR ADVICE. CLIENT IS SOLELY AND EXCLUSIVELY DEALING WITH SHERWOOD, AND CLIENT AGREES THAT IT SHALL HAVE NO RIGHTS OR CLAIMS AGAINST ANY AFFILIATES OF SHERWOOD OR ANY OFFICER, DIRECTOR, EMPLOYEE, MEMBER, PARTNER, OR AGENT OF SHERWOOD OR ANY OF ITS AFFILIATES, NONE OF WHOM CLIENT AGREES SHALL HAVE ANY OBLIGATIONS, DUTIES OR LIABILITIES TO CLIENT IN CONNECTION WITH THIS AGREEMENT OR THE ENGAGEMENT.

**15. NOTICES**. Any notice from one party to the other sent and received within the United States, shall be sent (a) via first class certified mail, return receipt requested or (b) via a nationally recognized overnight courier capable of verifying delivery, marked for next business day delivery and shall be deemed received upon the earlier of (i) the date of actual receipt, (ii) the date such mail is refused, (iii) thedate such mail is returned, or (iv) five (5) days following deposit with the U.S. Postal Service. Notices sent or received outside the United States shall be sent via an internationally recognized overnight couriercapable of verifying delivery, marked for second business day delivery and shall be deemed received upon the earlier of (i) the date of actual receipt or (ii) two (2) business days following deposit with such courier. Herein, "business day" means a day on which such courier is open for business within the jurisdiction to which notice is delivered. Notices shall be in writing, addressed to the person to be noticed at the address below or to such other person and/or address as may be designated from time to time in writing by such party to be noticed, and all applicable courier or postage fees shall be prepaid by the noticing party

**If to Sherwood**:

Michael A. Maidy Sherwood
Partners, Inc.
3945 Freedom Circle, Suite 560Santa
Clara CA 95054
(650) 329-9996


**If to Client**:

Mrs. Lisa Lederer Chief
Executive Officer
Magnacoustics, Inc.
1995 Park Street
Atlantic Beach, New York 11509

With a copy to:

Sandra E. Mayerson, Esq.
Mayerson & Hartheimer, PLLC
845 Third Ave., 11th floor
New York, NY 10022

## 16. COMPLETE AGREEMENT; SEVERABILITY; AMENDMENTS; ASSIGNMENT; CONSTRUCTION. This Agreement embodies the entire agreement and understanding between the parties hereto and contains all of the terms agreed upon by the parties with respect to the subject matter hereof, and there are no representations, agreements or understandings between the parties except as provided herein, whether expressed or implied, direct or indirect. This Agreement supersedes any prior communications, agreements or understandings relating to the subject matter hereof, and this Agreement may not be amended or otherwise modified or waived in any way except by a writing duly executed by both parties. No oral or implied agreements, waivers, or obligations shall be allowed to alter or affect such written provisions of this Agreement. This Agreement may not be assigned by either party without the prior written consent of the other party. There shall be no third party or other beneficiaries to this Agreement except as to the signing parties and, as to the indemnities herein, the indemnitees. Furthermore, both parties have negotiated the terms of this Agreement and have had the opportunity to engage counsel to review the same. Accordingly, this Agreement shall not be construed more strongly infavor or against either party hereto and shall be binding and inure to the benefit of Client, Sherwood, and their respective permitted successors and assigns. The invalidity or illegality of any provision or term contained in or made a part of this Agreement shall not affect the validity of the remainder of this Agreement and, where unenforceable or invalid provision would be enforceable or valid if requiring a lesser magnitude or degree of obligation or right, such provision shall be reduced to such extent needed to make such provision enforceable and valid. The headings in this Agreement are inserted for convenience only and shall not affect the constructionhereof.

## 17. FAX COUNTERPARTS. This Agreement may be entered into by the parties by signing any one or more counterparts, all of which shall constitute one and the same instrument. This Agreement shall become effective when approved by the Bankruptcy Court. This Agreement may be delivered to such other parties via facsimile. Anyparty's faxed signature shall be deemed an original and binding signature as of the date set forth above.Please indicate your acceptance of the terms of this Agreement by signing below and returning same.

**18. ENFORCEMENT**. The prevailing party in any dispute in connection with this Agreement or the Engagement shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party.

Very truly yours,

_____

Michael Maidy
for Sherwood Partners, Inc.

APPROVED AND ACCEPTED:

By: Lisa Lederer                     Date: 11/17/2021
Its: Chief Executive Officer


| | |
|---|---|
| **TITLE** | Magnacoustics, Inc. Engt Letter |
| **FILE NAME** | Sherwood-Magnacou...RAFT 11.11.21.pdf |
| **DOCUMENT ID** | 1c5475bea052edd1b4c0f8dc9d7d3f016ad59488 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| ⟲ SENT | **11 / 11 / 2021** 22:39:16 UTC | Sent for signature to Michael A. Maidy (mam@shrwood.com) from ckarma@shrwood.com IP: 12.53.4.238 |
| ⊙ VIEWED | **11 / 11 / 2021** 22:48:19 UTC | Viewed by Michael A. Maidy (mam@shrwood.com) IP: 12.53.4.238 |
| ⬚ SIGNED | **11 / 11 / 2021** 22:48:41 UTC | Signed by Michael A. Maidy (mam@shrwood.com) IP: 12.53.4.238 |
| ⊘ COMPLETED | **11 / 11 / 2021** 22:48:41 UTC | The document has been completed. |

**C      Sherwood Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| MAGNACOUSTICS, INC., | Case No. 21-70670(RG) |
| Debtor. | |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
## SHERWOOD PARTNERS, INC., AS SALES AGENT

Upon the application (the "**Application**") of the above-captioned debtor and debtor-in-possession (the "**Debtor**"), for entry of an order, pursuant to bankruptcy Code sections 327(a) and 328, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 authorizing the employment and retention of Sherwood Partners, Inc. ("**Sherwood**") as sales agent; and the Court having held a hearing on July 11, 2022, at which there were no objections and reviewed the Application and the Declaration of Peter Hartheimer, that Sherwood does not hold or represent any interest adverse to the Debtor or its estate, that it is a "disinterested person" as the term is defined in Bankruptcy Code section 101(14); and that its employment is necessary and in the best interest of the Debtor's estate, creditors, and other parties in interest; and due and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is GRANTED to the extent set forth herein.

2.     Pursuant to Bankruptcy Code sections 327(a) and 328, the Debtor, as debtor and debtor-in-possession, is authorized to employ and retain Sherwood as sales agent effective as of the Confirmation Date, upon the terms and for the purposes set forth in the Application and the Engagement Letter (as defined in the Application) and to perform the professional services set forth in the Application and the Engagement Letter.

3.     Upon appropriate application to and order of this Court, Sherwood shall be compensated in accordance with section 330 and 331 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders entered in this case governing professional compensation and reimbursement for services rendered and charges and disbursements incurred.

4.     DELETED

5.     The court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.



**Dated: Central Islip, New York**
**July 15, 2022**

**Robert E. Grossman**
**United States Bankruptcy Judge**

2

**D**        **Magnacoustics to Sherwood Termination Letter**

December 13, 2023

Via Federal Express and email

Mr. Peter Hartheimer

Sherwood Partners, Inc.

3945 Freedom Circle #520

Santa Clara, CA 95054

Re: Letter Agreement between Sherwood Partners, Inc., and Magnacoustics, Inc., executed November 11, 2021

Dear Peter:

The purpose of this letter is to provide Sherwood with written notice that pursuant to paragraph 12 of the above-captioned agreement, Magnacoustics hereby terminates the services of Sherwood, effective five days from this written notice. We appreciate the effort Sherwood has put into this sale process, but as it does not appear that a sale is imminent, and Sherwood has not been providing services for some time, it no longer make sense to continue your services. Indeed, when Brad Goldsmith left Sherwood's employ, he asked me to take over all negotiations with ICS, the only interested party, and I have done so for some time. Accordingly, with the consent of the Plan Ombudsman, we need to formally terminate your services at this time. Magnacoustics recognizes that we have an outstanding balance of $15,000 with you. We will address this shortly with the proposed payment schedule.

Please note that pursuant to paragraph 12 of the above-captioned agreement, upon termination, Sherwood must supply us with a written list of all parties to whom it introduced our sale opportunity during the pendency of this agreement for purposes of your "tail". Please provide this by the end of the month.

Again, I appreciate your efforts on behalf of Magnacoustics, and hopefully our paths will cross again.

Sincerely,

Martin Lydon

Martin Lydon

Chief Executive Officer

**E**     **Sherwood Invoice and Account Record**



# INVOICE

3945 Freedom Circle
Suite 560
Santa Clara, CA 95054

| Date | Invoice # |
|------|-----------|
| 01/30/2024 | INV-02273 |

**Bill to:**
**Magnacoustics, Inc.**

| Description/Memo | Amount |
|------------------|--------|
| Consulting fees:<br>-February 2023 -- $3,750<br>-March 2023 -- $3,750<br>-April 2023 -- $3,750<br>-May 2023 -- $3,750 | $15,000.00 |
| Consulting fees:<br>-August 2023 -- $3,750<br>-September 2023 -- $3,750<br>-October2023 -- $3,750<br>-November 2023 -- $3,750<br>-December 2023 -- $3,750 | $18,750.00 |
| **Total amount** | $33,750.00 |
| **Total due** | $33,750.00 |

| Current | 1 – 30 Days Overdue | 31 – 60 Days Overdue | 61 – 90 Days Overdue | Over 91 Days Overdue | Total Due |
|---------|---------------------|----------------------|----------------------|----------------------|-----------|
| 33,750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33,750.00 |

Wire Instructions:
Account Number: 6859795681
Account Name: Sherwood Consulting LLC
ABA Number: 121000248
Bank Name: Wells Fargo Bank N.A.
Bank Address: 301 University Avenue, Palo Alto, CA 94301

ACH:
Account Number: 6859795681
Account Name: Sherwood Consulting LLC
Routing Number: 121042882
Bank Name: Wells Fargo Bank N.A.
Bank Address: 301 University Avenue, Palo Alto, CA 94301





3945 Freedom Circle
Suite 560
Santa Clara, CA 95054

Wire Instructions:
Account Number: 6859795681
Account Name: Sherwood Consulting LLC
ABA Number: 121000248
Bank Name: Wells Fargo Bank N.A.
Bank Address: 301 University Avenue, Palo Alto, CA
94301

ACH:
Account Number: 6859795681
Account Name: Sherwood Consulting LLC
Routing Number: 121042882
Bank Name: Wells Fargo Bank N.A.
Bank Address: 301 University Avenue, Palo Alto, CA
94301

**F** **Confirmation Affidavit**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAGNACOUSTICS, INC., | ) | Subchapter V |
| | ) | |
| Debtor. | ) | Case No. 21-70670 (RG) |
| | ) | |
| | ) | **Hearing Date: July 11, 2022 at 10:00 a.m.** |
| | ) | **Obj. Deadline: July 1, 2022** |
| | ) | |

## AFFIDAVIT OF MARTIN LYDON IN SUPPORT OF CONFIRMATION

I, Martin Lydon, being over 18 years of age, pursuant to 28 U.S.C. § 1746, do hereby make this affidavit of my own free will in support of the confirmation of the *Subchapter V Debtor's First Amended Plan of Reorganization* [Docket No. 96] (as it may be modified or supplemented in accordance with the terms thereof, the "**Plan**") and to verify certain facts set forth in the Debtor's brief in support of confirmation of the Plan [Docket No. 104] ("**Debtor's Brief**"), and do declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge as of this 8th day of July, 2022, and if called upon to testify with respect to Confirmation I would testify as follows:

1.      I am the COO of Magnacoustics, Inc., a New York corporation, the debtor and debtor-in-possession herein (the "**Debtor**"), and am generally familiar with the Debtor's day to day operations, business, financial affairs, and books and records. In my capacity as COO, I have been responsible for supervising the lawyers and financial advisors who have contributed to the Debtor's reorganization, as well as the internal team of professionals who have worked on the plan of reorganization. Unless noted otherwise, all of the statements herein are from my own personal knowledge and familiarity with the facts.

2.      In my capacity as COO, I have carefully reviewed the Debtor's Brief. As a layman, I cannot draw any legal conclusions, but I believe that all of the facts submitted by the Debtor in the Debtor's Brief are true and correct. I note that I did not personally examine the Ballots[1]; therefore, with respect to any facts in the Debtor's Brief regarding voting, I am relying upon the Certification of the Voting Agent which I believe to be correct.  I am especially proud that according to the Voting Agent, every creditor who voted, voted to accept the Plan. I believe this demonstrates the hard work my team put into developing a plan of reorganization that is in the best interests of all parties.

---

[1] Capitalized terms not otherwise defined herein have the respective meaning ascribed to them in the Plan.

3.      Both the CEO of the Debtor and myself have been actively involved on behalf of the Debtor in the negotiation of the Plan. I was responsible for giving the CEO's and my comments to each proposal to our counsel. Accordingly, I can assure the Court that this Plan was negotiated in good faith at arm's-length over a period of several months.

4.      This Plan offers a considerably higher return to creditors than the First Plan filed in October 2021. The difference is that our creditors gave us the breathing space to introduce a new primary product, for which we already have several advance orders. Based on the reception that the new product received at a tradeshow in November 2021, our financial advisors, with my input, were able to put together business projections which showed we could now offer a higher dividend to our creditors.

5.      Although the projections were prepared by our financial advisors, Clifton Larson Allen ("**CLA**"), I worked very closely with them in developing a business plan upon which the projections accompanying the Plan are based. I also vetted and received input to the business plan and projections extensively, both internally and with our legal and financial advisors. I believe that the projections are realistic and conservative. This is borne out by our financial results at the end of June, 2022. Although our May results were disappointing, my team worked hard to recover, and we are now on track to meet or exceed our projections. I believe our swift recovery from our disappointing May also demonstrates what our team can do to ensure that we meet our projections.

6.      As I said, we are now on track to meet or exceed projections. For example, the projections attached to the Plan predicted gross profit in June, 2022, of $148,784. I am advised by our financial advisor that our actual gross profits were $148,792. Similarly, our income for June, 2022, was projected at $29,348, and I am advised by CLA that our actual income was $43,757. At the time we submitted the Plan, we projected that we would have $171,812 cash on hand at the end of June, and that this would be sufficient to make all of the payments required on the Initial Distribution Date. I am advised by our financial advisor that our actual cash on hand at the end of June, 2022, is $363,025. A large part of this variance comes from the fact that we have not paid $155,000 of professional fees, which we thought would be approved by the Court and paid prior to June 30, 2022. But even taking this amount out of the equation, we have $35,679 more than projected. Accordingly, I believe that our projections are realistic, the plan is feasible, and that the Debtor will be able to make all of the payments required under the Plan.

7.      I have reviewed with CLA their liquidation analysis and vetted it both internally and with our legal and financial advisors. I believe that the liquidation analysis attached to the Plan as Exhibit 1 accurately reflects the grim alternative that liquidation would provide as opposed to reorganization. I have no doubt that creditors will receive more through the proposed reorganization than they would in a liquidation.

8.      Upon Confirmation, the Debtor will be implementing certain changes in its management structure. I will be moving up to CEO, and another valuable member of our team will be moving into the COO slot. Our existing CEO will continue as a director. I have reviewed the Plan and believe that it accurately sets forth the proposed corporate

governance for the reorganized Debtor, as well as the fact that the Debtor has agreed not to issue any non-voting securities.

9.    I understand that a plan must require that all professional fees and expenses be subject to Court approval. I have been working with our professionals with respect to their fee applications and have reviewed and extensively negotiated same. Accordingly, I am aware that all of the professionals will be submitting fee applications to this Court. It is my understanding that they will shortly submit, or have submitted already, interim fee applications, and that final fee applications will be submitted within 60 days from the Effective Date of the Plan. As I have already stated, we have earmarked $155,000 toward payment of the interim professional fees.

10.    None of our current products require government regulatory approval of any rate changes.

11.    In order to ensure that creditors get the highest possible dividend, the Plan requires the Debtor to go down the dual track of both reorganizing and running a sale process to see if that returns a higher dividend. As we negotiated the Plan, our largest creditor insisted that we have a neutral party monitor our sale process. We eventually agreed to appoint a Plan Ombudsman to monitor the sale process, keep creditors informed of the sale process, and to report to the Court any irregularities. Although this is an extra layer of expense for the Debtor, we believe that there is good cause to appoint a Plan Ombudsman, because, it is necessary that this role be undertaken in order to have a consensual plan. As our current Subchapter V Trustee, Mr. Salvatore LaMonica, had earned the trust of both Debtor's counsel and our largest creditor during plan negotiations, both the Debtor and our largest creditor agreed that he would be an excellent choice for Plan Ombudsman, and that there would be no conflict because his role as Subchapter V Trustee will terminate on the Initial Distribution Date when the plan is substantially consummated. Accordingly, I urge the Court to appoint Mr. LaMonica as Plan Ombudsman.

12.    The CEO and I have reviewed with counsel the list of executory contracts to be assumed. I believe it is in the best interests of the Debtor and all of its creditors for the Debtor to assume all of the contracts on that list, and that the Debtor has sufficient funds on hand to pay all cure costs upon the Effective Date of the Plan.

13.    I have not commented here in on how the debtor classified Claims, which Classes are Impaired, and other similar technical requirements of a plan. I believe the Plan speaks for itself in this regard, and that it is readily apparent that the technical requirements of the Bankruptcy Code have been met.

## CONCLUSION

I hereby declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and I respectfully request that the Court enter an order confirming the Plan in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: July 8, 2022                    s/ Martin Lydon    7/8/2022
Dorchester, MA.                         Martin Lydon

Chief Operating Officer
Magnacoustics, Inc.
*Debtor and Debtor-in-Possession*

M

**G      Proposed Order**

ARCHER & GREINER, P.C.
Allen G. Kadish
Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036-8701
212-682-4940
akadish@archerlaw.com
hbreakstone@archerlaw.com

*Attorneys for Sherwood Partners, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                     Chapter 11

MAGNACOUSTICS, INC.,                       Case No. 21-70670-reg

         Debtor.

-------------------------------------------------------X

**ORDER AWARDING AND COMPELLING
PAYMENT OF OUTSTANDING INVOICE
<u>IN ACCORDANCE WITH 11 U.S.C. § 328</u>**

      Upon the final fee application of Sherwood Partners, Inc. [ECF No.    ], to allow and compel

payment of its outstanding invoice annexed as an exhibit thereto; and upon good and sufficient

cause; it is

      ORDERED:

      1.      Sherwood Partners, Inc., be, and hereby is entitled to and is awarded the amount of

$33,750.00 against Magnacoustics, Inc., debtor herein, in respect of its outstanding invoice

annexed as an exhibit to its motion.

      2.      Magnacoustics, Inc., debtor herein, shall pay the sum of $33,750.00 to Sherwood

Partners, Inc., within fifteen (15) days.

      3.      This Court reserves authority and jurisdiction to interpret and enforce this Order.

Dated: